# Merritt *v.* Getz, Appellant.

*Deed—Mistake—Reformation—Parol evidence.*

On a bill and cross-bill to reform a deed where both parties admit that the description in the deed is erroneous, and the plaintiff claims that the description in the deed should be reformed so as to conform to the description in the original agreement of sale, and the defendant claims that it should be reformed so as to conform to a survey made after the date of the agreement, but the parol evidence to show that the survey was adopted by the parties is vague and uncertain, the court will reform the deed so as to make it conform to the original written agreement.

Argued Nov. 4, 1901. Appeal, No. 213, Oct. T., 1901, by defendant, from decree of C. P. Berks Co., Equity Docket, 1900, No. 766, on bill in equity, in case of Thomas P. Merritt v. Hiram K. Getz, and the Reading Shale Brick Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Bill in equity and cross-bill to reform a deed.

From the record it appeared that on March 6, 1896, Thomas P. Merritt, one of the members of a partnership trading as the Reading Developing Company, executed articles of agreement by which he sold certain land to Hiram K. Getz. The land belonged to the partnership, but the title was in the name of Merritt. Subsequently a deed for the land was executed and dated on October 22, 1896, but was not delivered until October, 1898. Both plaintiff and defendant admitted that the description in the deed was erroneous. Plaintiff contended that the description should be reformed so as to conform to that in the original written agreement. The defendant claimed that the description should be changed so as to accord with a survey made after the agreement, and adopted by the parties by an alleged parol agreement. The testimony as to the alleged parol agreement is set forth in the opinion of the Superior Court. The court in an opinion by ENDLICH, J., entered a decree reforming the deed so as to make it conform with the original written agreement of sale.

*Error assigned* was the decree of the court.

*Cyrus G. Derr,* for appellant.

*Jeff. Snyder,* of *Snyder & Zieber,* for appellee.

OPINION BY BEAVER, J., March 14, 1902:

As to several of the foundation facts recited in the cross-bills of the plaintiff and defendants there is substantial accord. Both admit that the reformation of the deed from the plaintiff to the defendants is necessary; that the description therein contained, if the courses and distances are followed literally, is erroneous and that the survey will not close; that the eastern line is in the air and crosses a reservation of 100 feet west of what is called the Horning line, which both agree was not intended to be conveyed and is to be preserved and left open. Both agree as to what was contained in what is known as the Yeager lease. The lines describing the said lease, as contained in the drafts attached to the paper-books of both plaintiff and defendants, practically coincide and, inasmuch as the same differ materially from the courses and distances mentioned in the deed sought to be reformed, some reformation is necessary. The practical question is what shall be the basis of the reformation—the written agreement made by the parties or a subsequent survey made under direction of the defendants?

The written agreement between the plaintiff and defendants was for the ground covered by the Yeager lease and for an additional block of practically the same width extending eastward to within 100 feet of the Horning line, which was the eastern boundary of the tract. The plaintiff asks to have the deed reformed as to its courses and distances, so as to conform precisely to the description contained in the article of agreement and for which the defendants paid the purchase money as provided therein, based upon a calculation of the number of acres embraced within the lines of the Yeager lease and the addition to the east of it. The defendants seek to have the deed reformed, so as to change the northern lines, so that neither courses, distances nor amount will coincide with the agreement, and so that the northern lines may be extended so as to embrace about an acre and a half more than the amount stipulated to be conveyed in the agreement.

The parties, being in accord as to the necessity for reforming

the courses and distances contained in the deed, the only question was as to how such reformation should be made. The plaintiff asks to have them conform with the conceded lines of the Yeager tract and the addition to the east. The defendants seek to show by parol testimony that one of their number had a survey made subsequent to the date of the agreement which he returned to one of the parties interested who acted as secretary and treasurer of the land association from whom the defendants purchased.

The principal question in the case turns upon the sufficiency, both as to quantity and quality, of the testimony upon which defendants rely for the changes asked for in their cross-bill. We have carefully read all of the testimony upon the subject and have not been able to raise a question in our mind as to the correctness of the findings of fact and conclusions of law of the court below set forth in its original opinion and in the subsequent opinion disposing of the exceptions to its findings and conclusions. The testimony of one of the defendants, upon which it is sought to show the assent of one of the parties, for whom the plaintiff was trustee or attorney in fact, who acted as the secretary and treasurer of the partnership, is very indefinite as to the amount of land which he himself thought was contained in the lines which he had made and which constituted the survey according to which he desired the deed to be made, and the only response which Mr. Keiser, the secretary and treasurer, made to him, according to the testimony of the defendant, was "All right, or words to that effect." Just what was meant by that, inasmuch as the defendant who made the request had a very indefinite idea in his own mind, is difficult to tell. Did it mean "All right, notwithstanding the fact that this survey does not conform to our original agreement and contains more land than was paid for, I will see that a deed is made according thereto?" or did it mean "All right, I will see about it?" or "All right, I will consult my partners about it?" or "All right, I will compare the survey with the agreement?" or "All right, I will see Mr. Merritt, who is our trustee and attorney in fact, and see whether he is willing to make the deed in accordance with the survey?" No specific authority having been shown in the partner to whom the survey was shown to change the written contract, any one of these latter suppositions is as likely

to be what he meant as a distinct agreement on his part that the deed should be made in accordance with the survey. Surely this is not the clear, precise and indubitable evidence which will enable a chancellor to reform a written instrument, for it is to be observed that it is not so much the deed, which it is admitted upon all hands needs reformation, which is to be reformed, but, if the defendants' contention be correct, the original agreement, which constituted the contract between the parties and as to which their minds met when it was executed, must also be reformed and in such a way as to change the shape, the courses and distances of the northern line and the amount included in the Yeager lease and the addition thereto, which was the subject of the written agreement.

Assuming, without discussion for present purposes, the legal positions claimed by the defendants, we are unable to say that the facts, as presented by them, entitled them to a reformation of the deed, according to their contention. Without considering the specifications of error in detail, we are clearly of the opinion that the court below is justified in all of the findings of fact and correct in the conclusions of law based thereon. The assignments are, therefore, all overruled.

It is conceded that there is a clerical error in the amount of the consideration money, as stated in the final decree, which should be $2,670.31 instead of $2,740.31. This, however, does not interfere with the correctness of the decree, so far as the amount to be paid by the defendants to the plaintiff is concerned. Let this correction, therefore, be made and the decree of the court below as so modified be, and it now is, affirmed.